# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT NJOS, | : | CIVIL NO. 3:12-CV-01251 |
| Plaintiff, | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| Bureau of Prisons | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION[1]

### I. Statement of Facts and of the Case

Scott Njos is a federal inmate housed at the United States Penitentiary, Lewisburg, where he is currently serving an 188-month sentence following his conviction on bank robbery, Hobbs Act robbery, escape, and assault on a federal officer charges. While in federal custody, Njos has amassed an extensive disciplinary history, having been cited on dozens of occasions with prison rules infractions, many of which involved violent or disruptive behavior by Njos in an institutional setting. This history of recidivism and on-going institutional

---

[1] The parties are advised that, pursuant to 28 U.S.C. § 636, the district court has orally referred the above-captioned case to the undersigned for pre-trial management, resolution of non-dispositive motions, and preparation of reports and recommendations on potentially dispositive matters.

misconduct led to the reassignment of Njos to the Special Management Unit of the United States Penitentiary, Lewisburg, where the plaintiff currently resides.

Njos is also a prolific litigator in federal court.[2] Much of this litigation involves Njos' recurring complaint regarding the medical care and treatment which he receives at the Lewisburg Penitentiary. The instant case is but one example of this growing body of litigation brought by Njos. While this lawsuit has undergone several transformations during the past three years that it has been pending before the court, in its current form this case brings a single claim against a solitary defendant.

Presently, Njos is bringing a claim against the Federal Bureau of Prisons in this case pursuant to the Rehabilitation Act, 29 U.S.C. §§504, 705, and 794(a). In essence, Njos alleges that the Federal Bureau of Prisons is discriminating against him based upon a disability which he suffers, in that federal prison official are excluding him from prison programming based solely upon his disabilities. Njos describes these disabilities as a history of bi-polar disorder, post-traumatic stress disorder, major depressive disorder, and schizophrenia. (Doc. 83.)

---

[2] See e.g., Njos v. Bledsoe, 3:12-CV-243; Njos v. Bledsoe, 3:12-CV-476; Njos v. Thomas, 3:13-CV-2721; Njos v. Thomas, 3:13-CV-2816; Njos v. Thomas, 3:14-CV-766; Njos v. Bureau of Prisons, 3:12-CV-1251; Njos v. Kane, 3:12-CV-1252; Njos v. Carney, 3:12-CV-1375; Njos v. United States, 3:15-CV-1960; Njos v. Thomas, 3:14-CV-875.

Having framed his claim in this lawsuit in this fashion, Njos has now filed a series of summary judgment motions and partial summary judgment motions. (Docs. 103, 124, 150, and 206.) While these motions are often cast in slightly different terms, the gravamen of each of these motions is the same. In these pleadings, Njos seeks a declaration by this court finding as a matter of law that Njos is "disabled" as that term is defined under the Rehabilitation Act due to these mental health impairments. Njos also demands a finding as a matter of law that the Bureau of Prisons has discriminated against him due to his disability by denying him access to certain prison services and programming.

The Bureau of Prisons has responded to this battery of summary judgment motions by opposing these motions and contesting Njos' Rehabilitation Act claims on the most basic of factual levels, by disputing that Njos' mental health condition constitutes a disability under the Act. In support of these responses in opposition to Njos' numerous summary judgment motions, the defendant has tendered declarations and medical records which suggest that Njos does not suffer from the array of catastrophic mental health maladies which he claims. Instead, according to the defendant Njos has been diagnosed as a malingerer who has a non-disabling anti-social personality disorder.

It is against the backdrop of this stark, and very fundamental, factual dispute that we are called upon to consider whether Njos is entitled to judgment as a matter of law on his Rehabilitation Act claims. For the reasons set forth below, we conclude that material disputed issues of fact preclude summary for the plaintiff in this case, and recommend that these summary judgment motions be denied.

## II. Discussion

### A. Summary Judgment - Rule 56, Standard of Review

Federal courts are permitted to summarily adjudicate an action in order to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a jury trial would, therefore, "be an empty and unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS 134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56. The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute

about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the

> opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is through this analytical lens that we now assess the plaintiff's multiple motions for summary judgment.

### B. Disputed Material Issues of Fact Preclude Summary Judgment for the Plaintiff in This Case

In this case Njos' claims are premised on the Rehabilitation Act, a federal statute which provides in part that:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency . . . .

29 U.S.C. § 794 (a).

"To prove a claim under . . . the . . . R[ehabilitation] A[ct], Plaintiffs must show that: (1) they are handicapped or disabled as defined under the statutes; (2) they are otherwise qualified to participate in the program at issue; and (3) they were precluded from participating in a program or receiving a service or benefit because of their disability. Chambers ex rel. Chambers, 587 F.3d at 189." CG v. Pennsylvania Dep't of Educ., 734 F.3d 229, 235 (3d Cir. 2013). A disability, in turn, is defined as : " '(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment.' 42 U.S.C. § 12102." Williams v. Philadelphia Hous. Auth. Police Dep't, 380 F.3d 751, 762 (3d Cir. 2004).

Disability determinations across the spectrum of mental health disorders routinely entail a complex and subtle multi-faceted legal, medical and factual analysis. Given the very fact-specific nature of this inquiry, the question of the disabling effect of mental illness often is not susceptible to an easy or simple answer. However, analysis of disability issues in the field of mental health reveals an emerging legal consensus on certain matters. At the outset, the most severe mental health diagnosis claimed by Njos in this case, schizophrenia, is frequently, but not always, deemed to be a disabling mental health condition. Compare, M.P.

ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn., 439 F.3d 865 (8th Cir. 2006); R.W. v. Bd. of Regents of the Univ. Sys. of Georgia, No. 1:13-CV-2115 LMM, 2015 WL 4306858, at *1 (N.D. Ga. Feb. 27, 2015) with Roman-Martinez v. Potter, 550 F. Supp. 2d 270, 272 (D.P.R. 2008). In contrast, the mental health diagnoses ascribed to Njos by the Bureau of Prisons, malingering and anti-social personality disorder, are often, but not always, viewed as ailments which are not disabling. Compare, Baxter v. Barnhart, 165 F. App'x 802, 804 (11th Cir. 2006); Waldron v. Sec'y of Health, Ed. & Welfare, 344 F. Supp. 1176, 1177 (D. Md. 1972); Hunter v. Sec'y, Dep't of Health, Ed. & Welfare, 284 F. Supp. 524, 525 (E.D. Pa. 1968) supplemented, 329 F. Supp. 43 (E.D. Pa. 1971) with Berman v. Durkin, No. 9:13-CV-0136 LEK/RFT, 2015 WL 1481769, at *12 (N.D.N.Y. Mar. 31, 2015); Oliver v. Johnson, No. 2:09-CV-05336 JLL, 2014 WL 2619845, at *9 (D.N.J. June 11, 2014).

The Rehabilitation Act then sets as exacting standard of causation and only "allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program *solely* on the basis of disability." CG v. Pennsylvania Dep't of Educ., 734 F.3d 229, 235-36 (3d Cir. 2013)(emphasis added.) Thus, to ultimately sustain his burden of proof on his Rehabilitation Act claim Njos must prove both: (1) that he was disabled; and (2) that he was subjected to

discrimination exclusively because of his disability. Further, in order for the plaintiff to prevail on summary judgment on this Rehabilitation Act claim Njos must show that there is no factual dispute regarding either his disability or the fact that discrimination based upon the disability was the sole basis for some official action. Where a factual dispute exists on either of these elements of a Rehabilitation Act claim, summary judgment is inappropriate. See Doe v. Salvation Army in U.S., 531 F.3d 355, 358 (6th Cir. 2008).

Judged against these legal tenets, Njos' motions for summary judgment plainly fail since all of the essential, material elements of his Rehabilitation Act claim are factually disputed. At the outset, the parties dispute whether Njos is, in fact, disabled, the first essential prerequisite to a Rehabilitation Act claim. The contrasting positions of the parties turn on the proper diagnosis of Njos mental health conditions, and a fact-bound assessment of how those conditions limit Njos' major life activities. As framed by the parties, these are hotly disputed factual matters, which simply cannot be resolved on summary judgment.

This threshold factual controversy, in turn, defines other essentially factual disputes between these parties. Because Njos views himself as disabled, he sees all subsequent prison policy decisions affecting him as evidence of discrimination against him based solely upon his disability. The Bureau of Prisons, in turn,

considers Njos to be an anti-social malingerer. Viewing Njos through the prism of this perspective, prison officials see their actions as necessary security measures designed to promote institutional order when dealing with a dangerous, disruptive recalcitrant inmate.

In our view, none of these fact-bound questions are amenable to resolution in Njos' favor as a matter of law. Therefore, since Njos' claims are replete with factual controversies, the plaintiff's motions for summary judgment should be denied.

Finally, this recommendation guides us in the resolution of one other pending motion in this case. Presented with multiple, and repetitive, summary judgment motions the defendant moved to strike Njos' last summary judgment motion as redundant. (Doc. 211.) Rule 12(f) of the Federal Rules of Civil Procedure governs motions to strike pleadings and provides, in part, that:

> **(f) Motion to Strike.** The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

Fed. R.Civ. P. 12(f).

While rulings on motions to strike rest in the sound discretion of the court, Von Bulow v. Von Bulow, 657 F.Supp. 1134, 1146 (S.D.N.Y. 1987), that

discretion is guided by certain basic principles. Because striking a pleading is viewed as a drastic remedy, such motions are "generally disfavored." Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1057 (5th Cir. 1982). As one court has aptly observed: "striking a party's pleadings is an extreme measure, and, as a result, . . . '[m]otions to strike under Fed .R.Civ.P. 12(f) are viewed with disfavor and are infrequently granted.' Lunsford v. United States, 570 F.2d 221, 229 (8th Cir.1977) (citing 5 Wright & Miller, Federal Practice and Procedure. Civil § 1380 at 783 (1969)). See also Resolution Trust Corp. v. Gibson, 829 F.Supp. 1103, 1106 (W.D.Mo.1993); 2 James Wm. Moore et al., Moore's Federal Practice § 12.37[1] (3d ed. 2000)." Stanbury Law Firm v. I.R.S., 221 F.3d 1059, 1063 (8th Cir. 2000). In practice, courts should exercise this discretion and strike pleadings only when those pleadings are both "redundant, immaterial, impertinent, or scandalous" and prejudicial to the opposing party. Ruby v. Davis Foods, Inc., 269 F.3d 818, 820 (7th Cir. 2001).

 Here, the defendant argue that Njos' latest summary judgment motion should be stricken because it is redundant of prior motions filed by the plaintiff. There is great force to this argument, since Njos tends to file the same pleadings multiple times, and we commend to Njos the observation of Albert Einstein that doing the

same thing over and over again and expecting different results is the definition of insanity. However, given our recommended resolution of these summary judgment motions on their merits, it is also recommended that this motion to strike be dismissed as moot.

## III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's Motions for Summary Judgment and Partial Summary Judgment, (Docs. 103, 124, 150, and 206.), be DENIED, and the Defendant's Motion to Strike, (Doc. 211.) be DISMISSED as MOOT.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record

developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 1st day of September 2015.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
