# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SCOTT NJOS, | : | CIVIL NO. 3:12-CV-1251 |
| Plaintiff, | : | (Judge Kosik) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| UNITED STATES OF AMERICA | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATION[1]

## I.  Statement of Facts and of the Case

Scott Njos is a federal inmate housed at the United States Penitentiary, Lewisburg, where he is currently serving a 170-month sentence following his conviction on bank robbery, Hobbs Act robbery, escape, and assault on a federal officer charges. While in federal custody, Njos has amassed an extensive disciplinary history, having been cited on dozens of occasions with prison rules infractions, many of which involved violent or disruptive behavior by Njos in an institutional setting. This history of recidivism and on-going institutional misconduct led to the

---

[1] The parties are advised that, pursuant to 28 U.S.C. § 636, the district court has orally referred the above-captioned case to the undersigned for pre-trial management, resolution of non-dispositive motions, and preparation of reports and recommendations on potentially dispositive matters.

reassignment of Njos to the Special Management Unit of the United States Penitentiary, Lewisburg, where the plaintiff currently resides.

Njos is also a prolific litigator in federal court.[2] Much of this litigation involves Njos' recurring complaints regarding the medical care and treatment which he receives at the Lewisburg Penitentiary. The instant case is but one example of this growing body of litigation brought by Njos. While this lawsuit has undergone several transformations during the past three years that it has been pending before the Court, in its current form this case brings a single claim against a solitary defendant.

Presently, Njos is bringing a claim against the Federal Bureau of Prisons in this case pursuant to the Rehabilitation Act, 29 U.S.C. §§504, 705, and 794(a). In essence, Njos alleges that the Federal Bureau of Prisons is discriminating against him based upon a disability which he suffers, in that federal prison official are excluding him from prison programming based solely upon his disabilities. Njos describes these disabilities as a history of bi-polar disorder, post-traumatic stress disorder, and a major depressive disorder.

---

[2]See e.g., Njos v. Bledsoe, 3:12-CV-243; Njos v. Bledsoe, 3:12-CV-476; Njos v. Thomas, 3:13-CV-2721; Njos v. Thomas, 3:13-CV-2816; Njos v. Thomas, 3:14-CV-766; Njos v. Bureau of Prisons, 3:12-CV-1251; Njos v. Kane, 3:12-CV-1252; Njos v. Carney, 3:12-CV-1375; Njos v. United States, 3:15-CV-1960; Njos v. Thomas, 3:14-CV-875.

Having framed his claim in this lawsuit in this fashion, Njos filed a series of summary judgment motions and partial summary judgment motions. (Docs. 103, 124, 150, and 206.) While these motions were often cast in slightly different terms, the gravamen of each of these motions was the same. In these pleadings, Njos sought a declaration by this Court finding as a matter of law that Njos was "disabled" as that term is defined under the Rehabilitation Act due to these mental health impairments. Njos also demanded a finding as a matter of law that the Bureau of Prisons had discriminated against him due to his disability by denying him access to certain prison services and programming.

The Bureau of Prisons responded to this battery of summary judgment motions by opposing these motions and contesting Njos' Rehabilitation Act claims on the most basic of factual levels, by disputing that Njos' mental health condition constituted a disability under the Act. In support of these responses in opposition to Njos' numerous summary judgment motions, the defendant tendered declarations and medical records which suggested that Njos did not suffer from the array of catastrophic mental health maladies which he claims. Instead, according to the defendant Njos had been diagnosed as a malingerer who had a non-disabling anti-social personality disorder.

Given that the parties' submissions revealed a stark, material, and very fundamental, factual dispute on issues which go to the heart of this case, we found that these material disputed issues of fact precluded summary for the plaintiff in this case, and recommended that these summary judgment motions be denied. (Doc. 219.) On September 28, 2015, the district court adopted this Report and Recommendation and denied Njos' motions for summary judgment.

With the commendable, if occasionally misplaced, diligence which has marked Njos' approach to this litigation, the plaintiff has now filed a motion to reconsider this ruling denying his summary judgment motions, arguing that the ruling, which simply identified a clear factual dispute between these parties, contains "manifest errors of law and fact." (Doc. 240, 241.) In this regard, Njos' argument seems to be premised on the notion that Njos believes the defendant did not contest one of his summary judgment motions. (Doc. 209.) Therefore, according to Njos, the defendant should be deemed to have conceded the facts recited by Njos in that motion. Njos persists in claiming that the defendant has conceded this motion, even though it is entirely clear that the defendant strenuously opposed that motion, and actually sought to have Njos' summary judgment motion stricken. (Doc. 211.)

For the reasons set forth below, it is recommended that this motion to reconsider be denied.

## II. Discussion

### A. Motion to Reconsider Standard of Review

The legal standards that govern motions to reconsider are both clear, and clearly compelling. "The purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985). Typically such a motion should only be granted in three, narrowly defined circumstances, where there is either: "(1) [an] intervening change in controlling law, (2) availability of new evidence not previously available, or (3) need to correct a clear error of law or prevent manifest injustice". Dodge v. Susquehanna Univ., 796 F.Supp. 829, 830 (M.D. Pa. 1992 ). As the United States Court of Appeals for the Third Circuit has aptly observed:

> "The purpose of a motion for reconsideration ... is to correct manifest errors of law or fact or to present newly discovered evidence." Max's Seafood Café, 176 F.3d at 677 (quoting Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir.1985)). "Accordingly, a judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Id. (citation omitted).

Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

Thus, it is well-settled that a mere disagreement with the court does not translate into the type of clear error of law which justifies reconsideration of a ruling. <u>Dodge</u>, 796 F.Supp. at 830. Furthermore, "[b]ecause federal courts have a strong interest in the finality of judgments, motions for reconsideration should be granted sparingly." <u>Continental Casualty Co. v. Diversified Indus., Inc</u>., 884 F.Supp. 937, 943 (E.D. Pa. 1995). Moreover, it is evident that a motion for reconsideration is not a tool to re-litigate and reargue issues which have already been considered and disposed of by the court. <u>Dodge</u>, 796 F.Supp. at 830. Rather, such a motion is appropriate only where the court has misunderstood a party or where there has been a significant change in law or facts since the court originally ruled on that issue. See <u>Above the Belt, Inc. v. Mel Bohannon Roofing, Inc</u>., 99 F.R.D. 99, 101 (E.D. Va. 1983).

### B. <u>Njos Is Not Entitled to Reconsideration of This Ruling Denying His Motions for Summary Judgment</u>

In this case Njos simply has not shown that reconsideration of this ruling denying his prior summary judgment motions is necessary since he has not shown the existence of either: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to

prevent manifest injustice. Howard Hess Dental Laboratories Inc. v. Dentsply Intern., Inc., 602 F.3d 237, 251 (3d Cir. 2010).

In this case Njos cites no intervening change in the law which makes reconsideration necessary. He presents no new evidence to support his request. Moreover, he has not demonstrated that our ruling, which still enables Njos to litigate these issues, constitutes a clear error or rises to the level of a manifest injustice. Quite the contrary, this Court's prior ruling was entirely consistent with long-standing case law governing summary judgment motions, case law which recognizes Rule 56 specifically provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56. The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49. This settled case law also acknowledges that it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for

summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party. Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

Applying this analytical lens, we submit that the Court correctly concluded, that with respect to Njos' claims premised on the Rehabilitation Act, disability determinations across the spectrum of mental health disorders routinely entail a complex and subtle multi-faceted legal, medical and factual analysis. Given the very fact-specific nature of this inquiry, the question of the disabling effect of mental illness often is not susceptible to an easy or simple answer as a matter of law. For example, the most severe mental health diagnosis associated with Njos in this case, schizophrenia, is frequently, but not always, deemed to be a disabling mental health condition. Compare, M.P. ex rel. K. & D.P. v. Indep. Sch. Dist. No. 721, New Prague, Minn., 439 F.3d 865 (8th Cir. 2006); R.W. v. Bd. of Regents of the Univ. Sys. of Georgia, No. 1:13-CV-2115 LMM, 2015 WL 4306858, at *1 (N.D. Ga. Feb. 27, 2015) with Roman-Martinez v. Potter, 550 F. Supp. 2d 270, 272 (D.P.R. 2008). Similarly, courts have found that bi-polar disorder, a diagnosis claimed by Njos and supported by some medical evidence in the record, (Doc. 126-2, p.47.), may constitute

a disability under the Rehabilitation Act. See Datto v. Harrison, 664 F. Supp. 2d 472, 495 (E.D. Pa. 2009). Likewise, courts have conceded that, in certain circumstances, major depressive disorders and borderline personality disorders can be disabling conditions under the Act. Harris v. Oregon Health Sciences Univ., No. CV-98-1-ST, 1999 WL 778584, at *5 (D. Or. Sept. 22, 1999). In contrast, the mental health diagnoses ascribed to Njos by the Bureau of Prisons, malingering and anti-social personality disorder, are often, but not always, viewed as ailments which are not disabling. Compare, Baxter v. Barnhart, 165 F. App'x 802, 804 (11th Cir. 2006); Waldron v. Sec'y of Health, Ed. & Welfare, 344 F. Supp. 1176, 1177 (D. Md. 1972); Hunter v. Sec'y, Dep't of Health, Ed. & Welfare, 284 F. Supp. 524, 525 (E.D. Pa. 1968) supplemented, 329 F. Supp. 43 (E.D. Pa. 1971) with Berman v. Durkin, No. 9:13-CV-0136 LEK/RFT, 2015 WL 1481769, at *12 (N.D.N.Y. Mar. 31, 2015); Oliver v. Johnson, No. 2:09-CV-05336 JLL, 2014 WL 2619845, at *9 (D.N.J. June 11, 2014).

The Rehabilitation Act then sets as exacting standard of causation and only "allows a plaintiff to recover if he or she were deprived of an opportunity to participate in a program solely on the basis of disability." CG v. Pennsylvania Dep't of Educ., 734 F.3d 229, 235-36 (3d Cir. 2013)(emphasis added.) Thus, to ultimately sustain his burden of proof on his Rehabilitation Act claim Njos must prove both: (1)

that he was disabled; and (2) that he was subjected to discrimination exclusively because of his disability. Further, in order for the plaintiff to prevail on summary judgment on this Rehabilitation Act claim Njos must show that there is no factual dispute regarding either his disability or the fact that discrimination based upon the disability was the sole basis for some official action, since where a factual dispute exists on either of these elements of a Rehabilitation Act claim summary judgment is inappropriate. See Doe v. Salvation Army in U.S., 531 F.3d 355, 358 (6th Cir. 2008).

Judged against these legal tenets, Njos' motions for summary judgment were properly denied since all of the essential, material elements of his Rehabilitation Act claim were factually disputed by the parties. Thus, it is evident that the parties disputed whether Njos was, in fact, disabled, the first essential prerequisite to a Rehabilitation Act claim. The contrasting positions of the parties turn on the proper diagnosis of Njos mental health conditions, and a fact-bound assessment of how those conditions limit Njos' major life activities. As framed by the parties, these are hotly disputed factual matters, which simply cannot be resolved on summary judgment.

This threshold factual controversy, in turn, defined other essentially factual disputes between these parties. Because Njos views himself as disabled, he sees all subsequent prison policy decisions affecting him as evidence of discrimination against him based solely upon his disability. The Bureau of Prisons, in turn, considers Njos

to be an anti-social malingerer. Viewing Njos through the prism of this perspective, prison officials see their actions as necessary security measures designed to promote institutional order when dealing with a dangerous, disruptive recalcitrant inmate. Since none of these fact-bound questions were amenable to resolution in Njos' favor as a matter of law, and Njos' claims were replete with factual controversies, the Court properly denied the plaintiff's motions for summary judgment and reconsideration of that ruling is neither necessary, nor appropriate, in this case.

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion to reconsider, (Doc. 240), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the

record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of October 2015.

***S/Martin C. Carlson***
Martin C. Carlson
United States Magistrate Judge
